The judges of the United States Court of Appeals for the Fourth Circuit. All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. All right, thank you. You can be seated. Welcome to Richmond. We're glad to have you here. Hope the hurricane didn't cause any major inconvenience to anybody. It's our privilege this morning to have with us Judge Brian Jackson from the Eastern District of Virginia. District Judge, he's agreed to come up here and help us figure out some of these cases. And Judge Jackson, it's always a pleasure to have you join us. Mr. Koo, whenever you're ready, we'll be glad to hear from you. May it please the Court. My name is Brian Koo, and I represent Plaintiff Appellant John Nanny in this matter. This matter stems from a Title III Americans with Disabilities Act. My client, who suffers from post-polio syndrome, requires a wheelchair for mobility. He had visited defendant's property, defendant appellee's property, three separate occasions. During those occasions, he encountered several different types of architectural barriers prohibited by the Americans with Disabilities Act. This included inaccessible parking due to slopes, missing signs, disrepair. This also included inaccessible curb ramps due to excessively sloped long slopes, side flares, and disrepair. Also, a dangerous sidewalk route. And also, routes that contain excessive slopes throughout the property. After he encountered these issues, he filed a complaint. And in this complaint, he alleged that he encountered these things that he expected to return to the property in December that year, and after that, approximately two to three times a year after that. He lives in Delaware? Yes, sir. He lives approximately 40 miles from the property. And this is on I-95? Yes, that's correct. That's on the road from Delaware to Baltimore? That's correct, your honor. What, he goes over to baseball games or something? He has several relatives and friends that live in the Baltimore area. He is also a member of several non-profit organizations related to his disability that requires him to be in the Baltimore area. And as you stated, he is also a huge sports fan. So he travels regularly to the Baltimore area, very often. He's been in a wheelchair, essentially, all of his life since he... Yes. He suffered from polio, and after he recovered from that a bit, he used a cane. But after he recently got post-polio syndrome, he's back to a wheelchair and or scooter. How far is it from where he lives to Baltimore? From where he lives to Baltimore is approximately 65 or 70 miles. So this is the place that you're complaining about, the marketplace, is Aberdeen. Is it about halfway? It's about halfway, your honor. And in the first... Does he have to go to the bathroom some? Is that what it is? That's correct. It provides a perfect place for him to use the restroom. But also in the complaint, he alleged that he intends to return to utilize all the goods and services at the property, not just the restroom. I think that's an important distinction. Does the record show what the goods and services are? It does not. It does not. Why didn't you get that in the record somewhere or another? It is a shopping center, and it's our position that it's not important to talk about the tenants that are inside the... Do we take judicial notice of what's in the shopping center? You could take judicial notice. Are you sure we can? There's a... It's not in the record. Right. And you say you must take advantage of it, but we don't know what it is. I mean, is it restaurants or grocery stores or... It's a shopping center, your honor. Well, I know it's a shopping center, but what's in the shopping center? Service stations? Drug stores? I don't know what's in there because it's not in the record. I understand, your honor. We don't know what's in there unless we take judicial notice. I understand, your honor. However, it's our position that before even entering the property, once our client went into the parking lot and encountered these barriers, he has suffered injury, in fact, right at that moment, especially since, as opposed to the two cases... How do we know there are even restrooms in this place? You don't have it in the record, do you? We don't have it in the record, but we have it in the record that he stops there... We don't know what's in the marketplace. But we have it on the record that he uses the restroom at the marketplace. So you're saying it isn't a record that there are restrooms at the marketplace? That's correct, your honor. We just don't list the individual stores. I'm sorry? How many are there? That, I can't tell you, your honor. Now, the judge says, the district judge, said there was a rest area right down the road within three or four miles of this marketplace. That's correct, your honor. And that that was sufficient. But then I don't know whether he said it was sufficient or not, but he used the fact that there's a rest area close by on the interstate that wouldn't require him to get off and go into the mall. That's correct, your honor. That's sort of what this thing is, is a mall. That's correct, your honor. So why doesn't that take care of it? Your honor, as a disabled person, he does not need to explain his motivation for wanting to use this shopping center versus another rest area. It could be because the turn to get in this shopping center is easier to do than the rest area. It could be that he knows this property better than the rest area. He doesn't feel safe at the rest area. There's a myriad of possibilities. You're saying that's not relevant? That's not relevant in this inquiry. That goes to the credibility of the allegations in the first amending complaint, not to the sufficiency of the allegations in the complaint. So you say the judge was wrong to take that into account? Yes, your honor. Especially since the judge in the... How'd that get in the record that there was a rest area? The defendant included that in his motion to dismiss or reply to the motion to dismiss. They augmented the record. That's not in the complaint. It's not in the complaint. It's not in the complaint. Despite that... Well, maybe the court traditionally noticed the fact there was a rest area. It did. You can look at a map and see that probably... It did. And that's what it did. However, despite looking at the rest stop and some other areas around the defendant property, the case was decided 12B1 facially. And because it was done facially, all the allegations should have been accepted as true. In fact, earlier in the opinion, the district court states that and states that the intent for the return is clear. And at this point, I have no reason to doubt the veracity of that statement. No less than one page later, he goes into several reasons why he thinks that that's not true. Including the fact that my client had filed 12 previous cases. And based on 12 previous filings, filings that have never been found to be frivolous or abusive or any of that sort, he decided that it's more likely that he's trying to preserve attorney's fees for his attorney. And he really doesn't want to go back to the property. That type of analysis is completely inappropriate at this stage of the proceeding. You guys made a credibility analysis? Absolutely. Absolutely. And in fact, a couple of the cases that the district court cited, they even have some analysis about that. In one of the cases, the CMG Bethesda, which the court cited to repeatedly and said that the allegations were very similar. It says that Payne, the plaintiff in that matter, who had filed hundreds of cases, and in this case, 12, our plaintiff appellant, Nanny. And the court in Bethesda said, Payne's extensive ADA litigation history does not undermine the possibility of her alleged attempt to return to the Bethesda Marriott. That goes to Payne's credibility and hence relates to the veracity rather than the sufficiency of the allegations in the complaint. Bethesda may attack Payne's credibility by introducing evidence that she has filed frivolous complaints or abused the right to sue, but that argument must be supported by appropriate evidence. And it's our position that this is not the appropriate juncture for that type of argument. And the court on its own made the leap of logic that since there were 12 other cases and that there are other rest areas and other bathrooms, of course there are other bathrooms along that corridor, but those things coupled with his reading of the complaint, he decided that plaintiff appellant Nanny had no real intent to return to the property other than to preserve attorney's fees. And that wasn't sufficient enough to allege an intent to return. We've got cases here where these, mostly prisoner cases, where they're habitual litigants and keep filing lawsuits in the federal courts. And sometimes the courts just bar them from filing. That's correct, Your Honor. And I think if there's a reason to, it should. But it was noted by this court that the right to sue and defend in the courts is one of the highest and most essential privileges of citizenship and is granted and protected by the federal constitution. In this matter... How about that Daniels case? Yes, sir. You liked that part, didn't you? Yes, I did like that part. But that's unpublished. It is an unpublished decision. It isn't an unpublished decision. It's got Judge Keenan's name on it. It is an unpublished decision, but it's our position that this is still a persuasive case when looking at some of the lower court's opinions, that the four circuits analysis is still persuasive, even though it is not precedential in this matter. It is instructive. Exactly. It's instructive in this matter. And there is a dearth of case law in the fourth circuit concerning Title III Americans with Disabilities Act cases. And so that was a good case to kind of lead us down the path of the analysis. The other point that the district court found was that there weren't enough specific facts to demonstrate immediate harm. And the court compared the allegations in Plaintiff Nanny's complaint to the complaints in Bethesda and a couple other cases. However, let's take a look at the allegations in this case. Plaintiff encountered inaccessible parking designated for disabled use throughout the property due to excessive slopes, pavement and disrepair, and lack of proper access aisles. And this is the part that's different, comma, which caused him difficulty exiting and entering his vehicle because of the extra care needed to avoid a fall. That addition makes this allegation completely distinguishable from the other two cases that the district court relied on. In those two cases, one did not even allege that the plaintiff encountered any of these things and merely listed them as a laundry list as deficiencies at the property. The other case, Payne and Bethesda, listed the plaintiff was a female, yet they listed a male urinal as a future harm that she would face. That's not the case here. In this case, plaintiff personally encountered all the barriers to access at the property and they caused him to use greater caution so as not to tip over. That is injury right there. And as the Supreme Court said in Lyons, evidence of past injury presumes that the future injury will be there. And however, the court stated that without more facts, it can only speculate as to the harm that plaintiff Nannie would face if it returned to the property. However, if the parking, the curb ramps, the routes are all inaccessible, it necessarily presumes that he's going to face the same issues when he goes back. So on that issue, the court erred and did not really read the allegations and instead compared them to allegations that are completely lacking in personal encounterment and the type of injury that that person suffered. And so it's our position that the allegation that I just read to you is sufficient to withstand a motion to dismiss on a facial 12B1 attack. And also the allegations that he was going to go back to the property in December that year and two to three times a year after that are sufficient to establish an intent to return. And in fact, it's our position that if those allegations were illusion versus wildlife, that case would get decided differently. Because in that case, when they took deposition testimony of the plaintiffs, the plaintiff said, we would like to go back someday, you know, hopefully next year. You know, I would like to see the Lions maybe next year. That is distinguishable from the allegations we have here where we had a specific date, December, that he would return. And specifically stated that he would return two to three times a year after that. Again, Plaintiff John Nanny is 40 miles from the property. You know, while we're not trying to say that it matters too much of distance, the cases that the district court cited to all concern Florida plaintiffs filing in North Carolina or Maryland. And in Lugin, you had, you know, plaintiffs filing in America overseas. In this case, it's a 40 mile distance. We allege that he was specifically going back in a certain month and two to three times after that. So it's our position that the intent to return was established at this stage of the proceedings. And it was inappropriate for the judge to look at anything else and consider things outside the pleadings and the veracity of the allegations. Thank you, your honors. Mr. Sinclair. Good morning. My name is Bill Sinclair, Silverman, Thompson, Slotkin & White, on behalf of the Appellee, Aberdeen Marketplace. I wanted to begin by addressing a few of the points that Mr. Kuh made. First, he focused on the specific date of return, the December 2015 date, but that date was mooted. And there is good case law to say that if, in fact, the date passes and the case has not been decided, you cannot use it. That's in the CMG Bethesda case that Judge Motz issued. It's in a couple of other cases that we've cited. So I don't think this panel can consider the December 2015 date  Mr. Nanny has focused on the issue of credibility. And I agree that this is a 12B1. Well, we filed both a 12B1 and a 12B6 motion. Certainly, Judge Nickerson only decided on the 12B1, and it was only a facial attack. So this is not a factual attack. This is not a situation where you can get into credibility. And you have to . . . Yes, federal rule of evidence 201 allows you to take judicial notice. I'm not aware of any limitations on when that judicial notice can take. For example, it has to be at trial as opposed to at summary judgment as opposed to on the pleadings. So you can take judicial notice, you're saying, where the rest area was down the road on the interstate? Yes, I think so. Yes. And he can take judicial notice of what kind of a shop was in the mall? I'm not sure that he did, but yes. I think he could. Yes. He could take judicial notice that there was a . . . Yes, but I'm not sure that it mattered. A share of bread or a right aid or something? Yes, but I'm not sure that it matters. I'm . . . I don't want to interrupt Judge Traxler. No, and if I didn't answer your question, please let me know. But . . . Judge King's assistance, you answered the question. Okay. Yes, Judge. But is it even relevant that perhaps there's a wonderful bathroom 10 miles down the road that he could go to when you start analyzing whether there was, in fact, an injury, in fact, in this case? Yeah. Is it relevant? I'm not sure that it does. I think that really what the issue is, because I've been thinking about this, and I think there's some overlap when you're talking about credibility and plausibility. When we're talking about whatever happened in the past, whatever he may have done in the past, we need to presume those as true. If he went there three, four times between June 13 and 2015 when he filed it, we have to take that as true because he said he has done so. Maybe I can depose him later and see if he really did that, and if he didn't, that creates some problems. But you need to take that, and Judge Nickerson had to take that as true. It becomes, I think, a little bit of a different analysis when we start talking about the future because that's what this is really about, right? Before you leave that subject, I want to follow up on Judge Jackson's question. The fact that there's another facility close by that is ADA compliant, does that excuse or become a defense to a facility that's not ADA compliant? I mean, is it a defense to say, well, yeah, we know we're not compliant, but you just drive a little bit further. Of course not. And you can use something that is compliant. Of course not. Possibly be a defense. No, of course not. And I don't think we raised that. If we did, we certainly didn't. Because you're giving up Judge Nickerson, then. You're giving up the district judge. He said it was pertinent that there's a rest area down the road. I don't know that he said, you may have read the order more recently than I did. I don't know that he said it was pertinent. I think that it certainly was something that he considered. But I think it goes to the point I was trying to get to, which is when you're talking about future harm, and you're talking about a plausibility versus mere possibility standard. And I think that's what we have to be talking about. A possibility or possibility of what? Sure. So I think that Judge Nickerson announced a two-part test that he built. And I've always heard, I thought it was Lujan, maybe it's Lujan, but it's the 1992 Supreme Court case. But there is language out of there. And it's at page 564, where Justice Scalia says, and the affiant's profession of an intent to return the places they had visited before, et cetera, et cetera, is simply not enough. Such someday intentions, without any description of concrete plans, or indeed even any specification of when the someday will be, do not support a finding of the actual or imminent injury that our cases require. And so Judge Nickerson built off of that to announce this two-part test of a concrete and specific plan, an actual or imminent injury. And he analyzed both of those. He analyzed the concrete and specific plan, found that it was there. But then he looked to the actual future injury, which comes from the Lyons case, the city of Los Angeles versus Lyons case, that there had to be future injury. And that's what he found lacking. And that's the point that I think we need to consider most closely, is when we're talking about future harm, and we're talking about the plausibility that you have pled a future harm, because that's all we need to do at this point, right? We're at the motion to dismiss stage. If you have plausibly pled a future harm, what does that mean? OK, right. If I say, I'm going to do something in the future, OK, well, you can say, sure, I believe Sinclair that he says that. But how do we know that it's more of a mere possibility? If I tell you I'm going to be president of the United States, that's a possibility. But is it plausible I'm going to be president of the United States? Yes, sir. He's gone to the property. And he's experienced the deficiencies that we've talked about. Yes. He's experienced those harms. And then he says, I'm going back two or three times in the future. Isn't the focus on the likelihood that he will experience the same conditions in the future if they're not corrected? I think that's one. I think it's two issues. Go ahead, please. He satisfied the requirement that you show the likelihood of future harm? He's going back? I don't think he satisfied the requirement that he showed a concrete and specific plan. And I don't think he satisfied the requirement that he showed a future harm. And I'm happy to address both. I think that under Lujan, you need to show a concrete and specific plan. I think that's what Judge Motz announced in the CMG Bethesda case. I think that's what this Daniels, and we're all in agreement that Daniels is not published, but that there is some instructiveness, to quote Judge Jackson, to Daniels. And that's how Daniels approached it. I think that Daniels made, and we put this in our briefs, a sensible distinction. I live a mile from the Eddies on North Charles in Baltimore. I'm going to go there all the time. The closer in proximity, the easier it will be to plead a generalized intent to return. It becomes less plausible the further away you are, the less likely you are to return. Just the mere fact that he's going to go to Baltimore does not mean that he's going to a person who's never been to a place before and says, I'm going to go. His allegation is less plausible than a person who says, I've been there three times already, and I'm going back. I mean, doesn't the fact he's been there several times increase the plausibility when he says, I'm going back? No doubt, but we're on a sliding scale, right? It's, you know, there's zero plausibility, and then there's total plausibility, right? And where are you in the middle? You all may decide that we're over here. I don't think we're there yet by the mere fact of allegations that he's been there in the past, but it's for you all to decide. Yes, sir. On this motion, you don't have to speculate of whether he's going back or not. You're required to accept as true his statement that he's going back three to four times. Two to three times. Three times. Yes, sir. But you're right. Approximately two to three times. Approximately. I think it says approximately two to three times. I think so. And that could be one time. It could be four or five times. But he's going back per year. He says he's going back. You have to accept that as true. I think that's right. He's comfortable. We have to accept the fact he's in a wheelchair. Yes. And he's apparently comfortable that this is a place to stop. It's halfway. If he's going to go to the Camden Yards Baseball Park, it's halfway from home, right? Approximately, yes. This area is halfway from home. And the judge not only pointed out, took judicial notice. He said, I take judicial notice that there's a rest area on Interstate 95 within five miles of this spot. And also said that there's another shopping center directly across the street from this place. And put the name of it in. Beards Marketplace. Beards Hill Marketplace. And numerous other rest stops. Located in the route. So that's a suggestion that if there's an ADA compliant spot, or if there's another rest area somewhere, this one doesn't have to be in compliance with the law. And you give that up. Yes, sir. So he must have considered that pertinent because he wrote a half a page about it here. I think, I do. I think it goes to the idea, we're talking about this two-part test. And I'm not, let's at least agree for now that there is this two-part test that exists, a concrete and specific plan and an actual or imminent injury. And let's focus on the actual or imminent injury. Because that's what Judge Nickerson was talking about in that context. And I think that you need to, if you're adopting this test, and you're looking at the idea that you have to show actual or imminent injury, which there's certainly a lot of cases out there to support that. Then you, and then the question becomes, okay, so how do I judge that at the motion to dismiss stage? And I think you do that through a plausibility analysis. And this is the point I've not yet been able to articulate well. So I hope I do so now. But the idea, I think, with future harm is, anything's possible, right? Theoretical physicists, anything's possible in the future. But the question is, does it go from possibility to plausibility? And there's a number of factors that could be considered in that. Close distance, specificity. I say, I'm going back to December 23rd, 2017. That's a pretty specific allegation that you would probably need, that you need to take as true. And it certainly puts you more toward the plausibility side of things. The question that you need to decide is whether or not, given the allegations in this complaint, we have gone from mere possibility to plausibility. Considering these other factors that Judge Nickerson did, it goes to, I understand that it borders on credibility. But I think that there's a fine line between credibility and plausibility. And I think that he was looking at those issues within the context of plausibility. Is it plausible that this gentleman who lives in Delaware, who goes to Baltimore maybe two or three times a year, not to Aberdeen. Remember, he doesn't go to Aberdeen two or three times a year. He goes to Baltimore two or three times a year. That he's filed all these other suits for presumably the same issues, all these other places along the way that he's going to stop, or he could stop, or he has stopped, or he will stop. Is it plausible that in that world where he's alleged all of the, where he's filed all these other lawsuits, he's going to this place 30 miles further down the road? He says he's going to visit this property two to three times a year. Correct. That's what the complaint says. Paper at 13. Yeah. He wasn't talking about Baltimore. He says visit the property, intends to and will visit the property in December 2015 and approximately two to three times a year to utilize its goods and services. Means he's going to go to the Panera Bread and buy lunch maybe, and he's going to go to the bathroom. Well, that's what I guess. And you raised this earlier on, Your Honor. He does not identify goods and services whatsoever. I know he doesn't, but the judge took judicial notice that there was another marketplace and there's a, and the rest area is down the road. To me like there's a lot of stuff in here outside the record that somebody's taking, and the judge even said judicial notice. Sure. The court did. Sure, but even if you take, oh, sorry, go ahead. So it looks to me like if you take judicial notice that there's a shopping center across the street and that there's a rest area down the road, you could take judicial notice of what's in this particular spot, which might be a Rite Aid or a Panera Bread if he wants to stop for lunch or wants to stop and go to the bathroom. How can you go to the bathroom in the Panera Bread if you don't buy lunch? I guess you can. Well, but that's the point, I think, Your Honor. Under Maryland law, can you just stop to go to the, in the restaurant to go to the bathroom? I'm not an expert on that subject, Your Honor. I don't know. Well, you're the Maryland lawyer here. Well, I was first barred in California, so forgive me. Your Honor, I think that's the very point. Let's even take judicial notice that there's a Panera Bread, I know we're sort of making this up now, but let's take judicial notice of what is actually at this property. Then we've got to take judicial notice that there's a bathroom at this property. Then we need to plead that it is, in fact, that bathroom that I'm going to use. And then you need to plead that between where I park and getting to that bathroom, I encountered the slopes and the sidewalks and the inaccessibility that I have put in this complaint. And that's not that hard to plead. I mean, this is, you know, this is not, we're not creating some Herculean standard here by which we're going to throw out every Title 3 ADA plaintiff's case. All we're saying is- The question of whether they could have done better is a question of whether this is sufficient. I think it's a question of whether it's sufficient. I don't think it's sufficient. The question is whether this is sufficient. We have to deal with the cards we got. You have to deal with the cards you got, absolutely. It's not talking about whether they had a better hand or not. Maybe if they'd put something else in there, maybe it'd look like it had foration and it'd be all right. And that's, you know, if we're taking judicial notice, you know, there's several other pleadings. Well, you said, apparently said you could, you put it in your motion that there was a rest area down the road. Sure. The judge took judicial notice of that for you. That there's a rest area on the interstate. Yes, he did. But again, I think it still goes to the point that we, even if we take judicial notice of all these items, there still needs to be pleading. There still needs to be, the pleading needs to satisfy you that we've, that there's a plausibility that he is going to return and that he's going to face the same injury. He says he's going to return. And your honor, if you think that that suffices, then that suffices. He says he's going to. I understand. Intends to and will visit the property. I understand. And I would humbly. That's pretty blunt. Well, I can, you know, I can sit, I'm going to go to the Valley Inn tonight in Baltimore, but you know what? I don't know what's going to happen between now and five o'clock. You know, this is, this is, this is the point I'm trying to raise is that it's when you're talking about future conduct, as opposed to past conduct, I think it takes more to get you out of mere possibility and to plausibility than it does. If I said that last night I stayed at the Marriott hotel, I did. I stayed at the Marriott hotel. I know I did. You know, I have 24 hours ago. My car's still there. If I talk about what I'm going to do tonight, it's a different thing. It's possible. I'm going to go, you know, but there may be a car wreck on the way home. There may be something I have to do in Washington DC on the way back. It's possible. I'm going to do this. But that's not sufficient to get plausibility. Yes, sir. What would you require or expect him to put in paragraph 13 to reach this standard of plausibility that you raised? And he said, I intend to go back and we'll go back two to three times. He's been there previously. So it's not speculation. So what else would you require him to plead to reach the plausibility standard that you raised? Yes, sir. I think two things. Eight? No, not necessarily. I don't know that you need to plead a specific day. I think that's one factor to consider. I think, again, here, let me, if I can give just one example. You know, I, again, I live a block from a supermarket in Baltimore, Eddie's supermarket. I don't need, I think that if I, I don't, I wouldn't need to plead a specific date that I'm going to, I'll probably be there tonight. I may be there tomorrow. Pick up diapers, milk, whatever the kids need. Okay. But there's a difference between that and the giant supermarket at Bethany Beach, where we go every year. Okay. We go there every year on vacation in August. And so when they're talking about someplace that's two and a half hours away from where I live, I think that it becomes more important to plead a specific date. And this is, I think, the generalized exception that the Daniels court reached. They said, we don't need this four-factor, four-prong test out of Pingway, the Southern District of Ohio, in this case, because this guy lives in close proximity. It's not necessary, a generalized intent to return is more appropriate, the Daniels panel found, when you live closer to the spot than if you live further away. It becomes less plausible that I'm going to go to that giant in Bethany Beach unless I've got other facts to support it. Like the fact that we go there every summer. The fact that it's the only supermarket in Bethany Beach. The fact that it's got everything I need for the kids and everything else. Then those are the kind of facts that go to supporting plausibility, Your Honor. Didn't the plaintiff argue that there are other reasons for him to be going past this area? Other reasons that would contribute to the likelihood that he would go there? It's 30 miles from his home. 40, yes. OK, 40 miles. He has reasons to be going in that direction. There are reasons to be going in that direction. But the question is, is he going there specifically? And once he's there, what exactly is he doing? I mean, one of his contentions, one of his allegations is that he uses it to rest. There could be some facts that support that part of rest means that he needs to get out of his car and access these inaccessible ramps or access these. But to me, rest means just to stop. I don't know. At this stage, rest means rest. You accept it as true. I accept it as true. But then if we take the plain dictionary meaning of rest, rest doesn't mean get out of your car and go walking around. Rest means you stop the car and you don't do anything. You don't access. Well, that's my take, Your Honor. I mean, you certainly can reach a different. Might be different for a man in a wheelchair than it is for you. It might be. But that's the point, Your Honor. You've got to plead that. I mean, that's not hard. I mean, I agree. I'm not paraplegic. I don't have post-polio syndrome. I don't know what that means to rest. But he could very easily say as part of what I need to do to rest, I need to get out of the car, get into my wheelchair, move around a little bit, get the blood going. Again, this is not a Herculean standard we're talking about to get to this pleading that's necessary. But just to say I need to rest and then make the leap that rest includes getting in his ramps, I think goes a little too far. To sum up, I think that there's been a little. The Daniels panel expressly declined to adopt the four-part test. District courts throughout the Fourth Circuit since then have essentially said, Daniels is not precedent. We're going to use it. There are other courts in the Fourth Circuit that have said, we're not going to use this. We're going to use this concrete, specific, actual, imminent test. I think there would be benefit to making a determination as to what test is going to be going forward. Would you like us to come up with a published opinion that tells people what the test is? I certainly think it would provide some guidance. I think the district courts have used some different factors in determining where they want to come out on some of these. Some of them have adopted the four-part test. Some have adopted this idea of concrete, specific, and actual imminent. There's the Ninth Circuit in August came out with a deterrent effect test, which we don't have time to get into. But there are some other tests floating around there. Having that test, I think, will be a benefit. And if you agree that it's the concrete, specific, actual, imminent test, I don't think the allegations in this complaint meet that test. And I'm done. Thank you. Thank you, Mr. Sinclair. Mr. Coo, you have some time remaining. I'll be brief. I just wanted to address a couple of points that Mr. Sinclair made. Just a clarification. Not only did Plaintiff Nanny allege that he was going to stop at the Aberdeen, but specifically it says, due to his condition, Plaintiff often requires places to stop, to rest on drives, and to take bathroom breaks. And Aberdeen provides a perfect place for him. If that's taken as true, basically Plaintiff John Nanny is saying that he likes stopping at Aberdeen to take bathroom breaks as well. So it's not a situation where he is literally just stopping in his car, resting for five minutes, turning the car back on, and going. He's leaving his car, and he's going to face the same harm that he faced on his previous visits that he alleged clearly in the First Amendment complaint. Also, Mr. Sinclair talked about Daniels and their decision. In Daniels, the lower court granted the defendant's motion to dismiss on two reasons. And one of them is because there was no concrete, specific time listed in the complaint. The complaint only stated that he intends to go back to Arcade for his shopping needs in the future. Now, this court, in an unpublished decision, stated that we are aware of no precedent in this circuit that requires this degree of specificity to survive a motion to dismiss, and we decline to impose a requirement here. Basically, the court is saying, look, you don't have to say, I'm going in December 2015 or 2016. That complicates the analysis, especially on a facial attack. If the client or the plaintiff states that he's going to go back to Arcade, that's that he is going back, or if he intends to go back, you have to assume that he's going back. And the fact that he doesn't allege a specific time or date should not be fatal to his complaint at this stage of the proceedings. Now, Mr. Sinclair talked about a lot of things like, we need to know, is he going to a Panera? Is he using the bathroom? Is he doing this? Is he doing that? Maybe he is just waiting in his car. All those inquiries are better suited for further along in the discovery process where he'll be able to send out interrogatories. They'll be able to have John Nanny in front of him, and he'll be able to ask him these questions. And at that point, he will know his motivations. He will know the veracity of the allegations. He said, yeah, I'm going to this store tomorrow. I put it in my complaint. But you don't know if I'm going. You're right. I don't know if you're going. But at this stage, we need to assume that that's true. And yeah, there might be an accident, and you might not go. But that's something to be discovered later on in the process of the litigation. Not now, especially under a 12B1 facial attack, when all the allegations are to be accepted as true. And if all the allegations are accepted to be true, all the elements have been hit in this complaint. He's been there. He's faced architectural barriers. He's faced the discriminations. He's suffered the harm. He intends to go back specifically in December. That might be moot, but he also intends to go back approximately two to three times a year. Not he hopes to go back two to three times a year, but that he intends to go back two to three times a year. Thank you, Your Honor. Thank you. I noticed from your brief that you're from the Miami area. We hope that you, your family, friends, and property are all OK and survive the hurricane. Thank you, Your Honor. And the one that's on the way, too. OK, we'll come down and recounsel and then go into our next case.
judges: William B. Traxler, Jr., Robert B. King, Raymond A. Jackson